# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANTONIA MENDEZ MARIN,<br><br>             Plaintiff,<br><br>    vs.<br><br>CAROLYN W. COLVIN,<br><br>Acting Commissioner of Social Security,<br><br>             Defendant. | No. 4:15-CV-05105-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 17, 19 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 17, 19. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 17) and grants Defendant's motion (ECF No. 19).

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

§§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

1  work, analysis concludes with a finding that the claimant is disabled and is

2  therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

3      The claimant bears the burden of proof at steps one through four above.

4  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

5  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

6  capable of performing other work; and (2) such work "exists in significant

7  numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2);

8  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

9                          **ALJ's FINDINGS**

10     Plaintiff applied for disability insurance benefits and supplemental security

11 income benefits in January 2012.  In both applications, Plaintiff alleged a disability

12 onset date (as amended) of October 1, 2010.  Tr. 44, 204-17.  The claims were

13 denied initially, Tr. 137-40, and on reconsideration, Tr. 141-46.  Plaintiff appeared

14 at a hearing before an administrative law judge (ALJ) on May 1, 2014.  Tr. 42-84.

15 On May 23, 2014, the ALJ denied Plaintiff's claim.  Tr. 21-31.

16     At the outset, the ALJ found that Plaintiff met the insured status

17 requirements of the Act with respect to her disability insurance benefit claim

18 through December 31, 2014.  Tr. 23.  At step one, the ALJ found that Plaintiff had

19 not engaged in substantial gainful activity after the alleged onset date, October 10,

20 2010.  Tr. 23.  At step two, the ALJ found that Plaintiff has the following severe

impairments: mild to moderate degenerative disc disease of the lumbar and cervical spine with loss of disc height at L5-S1 and without stenosis; and adjustment disorder with anxiety and depressive features.  Tr. 23.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 24.  The ALJ then concluded that Plaintiff has the following RFC:

> to perform light work as defined in 20 C.F.R. § 404.1567(b) and §416.967(b) except she can speak and read English, but writes limited English.  She can lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk up to 6 hours in an 8 hour day; sit up to 6 hours in an 8 hour day; unlimited ability to push or pull (other than as stated for lift/carry).  She can frequently climb ramps, stairs, kneel and crouch; occasionally stoop and crawl; never climb ladders, ropes or scaffolds, and unlimited ability to balance.  She has unlimited manipulative, visual and communicative abilities (within the communicative abilities set forth above).  She should avoid concentrated exposure to extreme cold, vibration, hazardous machinery, and heights.  She has unlimited abilities with respect to exposure to wetness, humidity, noise, fumes, odors, dusts, gases, poor ventilation.

> From a mental perspective, she can carry out short, simple instructions and detailed instructions; maintain concentration and attention for extended periods; perform activities within a schedule; maintain regular attendance, and be punctual within customary tolerance.  She can sustain an ordinary routine without special supervision; work in coordination with or in proximity to other[s] without being distracted by them; [and] make simple work-related decisions.  She could have occasional waning in sustainability, but could still complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

Tr. 26.

1    At step four, the ALJ found that Plaintiff is unable to perform any past

2   relevant work.  Tr. 31.  At step five, after considering the testimony of a vocational

3   expert, the ALJ found there are jobs that exist in significant numbers in the

4   national economy that Plaintiff can perform such as production assembler, packing

5   line worker, and cleaner/housekeeper.  Tr. 32.  On that basis, the ALJ concluded

6   that Plaintiff is not disabled as defined in the Social Security Act.  Tr. 33.

7    On September 11, 2015, the Appeals Council denied review of the ALJ's

8   decision, Tr. 1-10, making the ALJ's decision the Commissioner's final decision

9   for purposes of judicial review.  *See* 42 U.S.C. § 1383(c) (3); 20 C.F.R. §§

10  416.1481, 422.210.

11                                    **ISSUES**

12   Plaintiff seeks judicial review of the Commissioner's final decision denying

13  her disability insurance benefits under Title II and supplemental security income

14  under Title XVI of the Social Security Act.  ECF No. 17.  Plaintiff raises the

15  following issues for this Court's review:

16   1.  Whether the ALJ properly weighed the medical opinion evidence;

17   2.  Whether the ALJ properly discredited Plaintiff's symptom claims; and

18   3. Whether the ALJ made a proper step five finding.

19  ECF No. 17 at 7-8.

20

# DISCUSSION

## A. Medical Opinion Evidence

First, Plaintiff contends the ALJ improperly discounted the medical opinions of treating providers Victor Brooks, M.D.; Javier Huerta, PAC; and Heather West, LMHC.  ECF No. 17 at 10-14.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

1    treating physician, if that opinion is brief, conclusory and inadequately supported

2    by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228

3    (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

4    examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

5    may only reject it by providing specific and legitimate reasons that are supported

6    by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

7    F.3d 821, 830-31 (9th Cir. 1995)).

8         The opinion of an acceptable medical source, such as a physician or

9    psychologist, is given more weight than that of an "other source."  *See* SSR 06-03p

10   (Aug. 9, 2006), available at 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a);

11   *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).  "Other sources" include

12   nurse practitioners, physicians' assistants, therapists, teachers, social workers,

13   spouses, and other non-medical sources.  20 C.F. R. §§ 404.1513(d); 416.913(d).

14   However, the ALJ is required to "consider observations by non-medical sources as

15   to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812

16   F.2d 1226, 1232 (9th Cir. 1987).  Non-medical testimony can never establish a

17   diagnosis or disability absent corroborating competent medical evidence.  *Nguyen*

18   *v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  An ALJ is obligated to give

19   reasons germane to "other source" testimony before discounting it.  *Dodrill v.*

20   *Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

*1. Dr. Brooks and Mr. Huerta*

On September 6, 2013, treatment providers Dr. Brooks and Mr. Huerta rendered a joint opinion with respect to Plaintiff's RFC (hereafter Dr. Brooks' opinion).  Tr. 509-11.  They opined that Plaintiff was able to sit for 15-20 minutes at a time for a total of one to two hours, and stand or walk 15 minutes for a total of one to two hours.  Tr. 29 (citing Tr. 509).  The ALJ gave these assessed limitations little weight.  Tr. 29-30.

Because Dr. Brooks' opinion was contradicted by the less severe limitations identified by Drew Stevick, M.D., Tr. 118-20, and Lynne Jahnke, M.D., Tr. 51-57, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Brooks' opinion.

First, the ALJ found that the objective evidence did not support Dr. Brooks' opinion.  Tr. 29.  An ALJ may discredit a treating physician's opinions that are unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Here, for example, the ALJ found that the MRIs did not support Dr. Brooks' assessed severe workplace limitations.  Tr. 29 (citing Tr. 471) (a cervical MRI on October 25, 2010 showed mild multilevel facet arthropathy, without neural foraminal stenosis); (citing Tr. 471, 473) (a lumbar MRI on February 27, 2012 showed mild DDD at L4-5 and L5-S1 with annual tear/bulging without any central or foraminal stenosis

1    noted); *see also* Tr. 464 (an August 2012 lumbar MRI continues to show mild

2    DDD).

3          Second, the ALJ found that Dr. Brooks' extreme limitations were

4    unsupported by treating sources who noted no more than mild findings during

5    examinations.  Tr. 28.  When evaluating conflicting medical opinions, an ALJ need

6    not accept the opinion of a doctor if that opinion is brief, conclusory, and

7    inadequately supported by clinical findings.  *Bayliss*, 427 F.3d at 1216 (citing

8    *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).  The ALJ found, for

9    example, that Plaintiff was seen in the ER for back pain on October 1, 2010,

10   following a motor vehicle accident.  Tr. 28 (citing Tr. 402-03).  The treating

11   physician found only normal findings during physical examination, and x-rays of

12   Plaintiff's cervical and lumbar spine were normal.  Tr. 28 (citing Tr. 363-64, 402-

13   03).  The ALJ further found that during an examination on April 25, 2011,

14   Matthew Peterson. M.D., examined Plaintiff and noted "mild" pain behavior.  Tr.

15   28 (citing Tr. 413-14).  Dr. Peterson observed Plaintiff's gait was slow, but her

16   neck was normal, there was no edema, and strength was normal.  Tr. 28 (citing Tr.

17   414).  Further, the ALJ found, Dr. Peterson noted that although Plaintiff

18   complained of lumbar radiculopathy, a straight leg raise test was negative, as was a

19   sensory exam.  Tr. 28 (citing Tr. 414).  Dr. Peterson opined that there were no

20   supporting objective findings indicative of radiculopathy.  Tr. 28 (citing Tr. 414).

1    Similarly, the ALJ found that the results of a November 2011 neurological exam

2    by Michael Wahl, M.D., were also unremarkable.  Tr. 28 (citing Tr. 341-44).

3       Third, the ALJ found that Dr. Brooks' opinion was refuted by Dr. Jahnke,

4    who reviewed the entire record and testified at the hearing.  Tr. 29.  Opinions of a

5    non-examining, testifying medical advisor may serve as substantial evidence to

6    reject a treating physician's opinion when those opinions are supported by other

7    evidence in the record and are consistent with it.  *Morgan v. Comm'r of Soc. Sec.*

8    *Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d

9    1035, 1041 (9th Cir. 1995).  "The ALJ can meet this burden by setting out a

10    detailed and thorough summary of the facts and conflicting clinical evidence,

11    stating his interpretation thereof, and making findings."  *Morgan*, 169 F.3d at 600-

12    601 (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)) (internal

13    citation omitted).  Here, the ALJ considered that Dr. Jahnke's opinion was

14    supported by mild findings on MRI's, and by mild objective findings on several

15    examinations.  For example, the ALJ found that at an exam in March 2012 by John

16    Groner, M.D., Plaintiff complained of pain and fatigue.  Tr. 28 (citing Tr. 416).

17    The ALJ found, however, that when Dr. Groner attempted strength testing, Dr.

18    Groner found Plaintiff "would give way before he had even applied any pressure."

19    Tr. 28 (citing Tr. 418).  Dr. Groner reported that he found no abnormalities during

20    other testing; moreover, he observed that Plaintiff could get up and out of her chair

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

and up and down from the exam table without difficulty.[1]  Tr. 28 (citing Tr. 418-19).  Because Dr. Jahnke's opinion was supported by and consistent with other evidence, the ALJ gave a specific, legitimate reason to give limited weight to Dr. Brooks' opinion.

Last, the ALJ found that because Dr. Brooks' opinion was not supported by objective evidence such as MRIs or examination results, the opinion must have been based on Plaintiff's less than fully credible subjective complaints.  An ALJ is not required to accept a medical opinion that is "largely based" on a claimant's non-credible self-reports.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  This was also a specific, legitimate reason to give limited weight to Dr.

---

[1] The ALJ cited additional normal exams.  *See, e.g.*, Tr. 28 (citing Tr. 464-65) (in August 2012, a treating ARNP noted that Plaintiff had traveled to Mexico, and Plaintiff's complaints of radicular symptoms were inconsistent with spinal MRIs); Tr. 28-29 (citing Tr. 499) (in August 2013 treating sources noted during an exam that all findings were within normal limits, including range of motion).  The ALJ appears to err when referring to a treating ARNP's May 29, 2012 exam.  *See* Tr. 28 (citing Ex. 13F, pp. 1-2), because Ex. 13F, pp. 1-2 is an August 2012 opinion referenced *infra* (Tr. 464-65).  The ALJ's error here is clearly harmless because the opinion overall is supported by substantial evidence.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

1  Brooks' opinion.

2      Plaintiff cites medical evidence that she contends shows that the ALJ erred

3  in her assessment of the medical evidence.  ECF No. 17 at 11 (citing Mr. Huerta's

4  treatment records at Tr. 445-49; 451, 459-62; 487; 490; 492; 514-15; 627; 629;

5  631; 634-35; 637; physical therapy record at Tr. 312; and unnamed treatment

6  records at Tr. 313-14; 316; 318-20); ECF No. 17 at 12 (citing Dr. Peterson's

7  opinion at Tr. 414, noting slowed, stooped gait, pain to palpitation and diagnosing

8  lumbar radiculopathy; chiropractic records at Tr. 334-36; lumbar MRI at Tr. 410;

9  hospital records at Tr. 357, indicating Plaintiff was transported by ambulance to

10 the hospital).  Plaintiff's contention is without merit.  Essentially, Plaintiff is

11 asking this Court to re-weigh the medical evidence.  Because it is the function of

12 the ALJ to weigh the credibility of the medical evidence, the Court must decline.

13 *See Tommasetti*, 533 F.3d at 1041-42 ("The ALJ is the final arbiter with respect to

14 resolving ambiguities in the medical evidence.").

15      *2. Ms. West*

16      In a letter dated August 20, 2012, therapist Ms. West reported that Plaintiff

17 had attended eleven counseling sessions at the Support, Advocacy, and Resource

18 Center (SARC) since March 28, 2012.  Tr. 463.  Ms. West opined that Plaintiff

19 was "currently limited in her daily functioning;" that Plaintiff's "post-traumatic

20 stress disorder, depression and memory issues often limit her ability to maintain a

consistent daily schedule;" and that with further counseling and support, it was possible that Plaintiff's functioning would improve.  Tr. 463.  The ALJ gave this opinion no weight.  Tr. 31

Because a licensed mental health counselor is an "other source," the ALJ was required to identify germane reasons for discounting Ms. Wests' opinions. *Molina*, 674 F.3d at 1111.

First, the ALJ found there is nothing in the record from treating or examining sources that corroborates Ms. West's opinion.  Tr. 31.  An ALJ may give less weight to an other source's opinion because it is not from an "acceptable medical source;" SSR 06-03p, but it would be error to reject her opinion *solely* on this basis.  However, as set forth below, the ALJ specifically noted that Ms. West's opinion contradicted that of acceptable medical sources.  Tr. 31.  To the extent any error occurred, it is harmless because the ALJ gave additional sufficient reasons for rejecting Ms. West's opinion.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-1163 (9th Cir. 2008).

Second, the ALJ found Ms. West's opinion is not consistent with Dr. Genthe's.  An ALJ may reject an opinion that is unsupported by the record as a whole or by objective findings.  *Batson*, 359 F.3d at 1195.  Dr. Genthe performed a consultative examination on March 21, 2012.  Tr. 30 (citing Tr. 420-24).  As part of his examination, Dr. Genthe reviewed a function report dated February 4, 2010.

1   Tr. 420.  Plaintiff reported that she had just started attending counseling and had

2   been taking a prescribed antidepressant for about three months, since December

3   2011.  Tr. 30 (citing 420-21).  The ALJ credited Dr. Genthe's findings that

4   Plaintiff's functioning was generally normal.  The ALJ found, for example, that

5   Plaintiff denied any memory loss and reported that she could take care of her own

6   basic grooming and hygiene; Plaintiff reported that she also prepared meals,

7   shopped, and drove.  Tr. 30 (citing Tr. 422).  The ALJ further found that, upon

8   examination, Dr. Genthe noted Plaintiff's findings were largely normal.  Tr. 30

9   (citing Tr. 422-23) (noting no psychomotor agitation or symptoms; no evidence of

10  thought disorder; normal orientation, and Plaintiff's testing demonstrated normal

11  short-term memory).  Dr. Genthe diagnosed adjustment disorder with mixed

12  anxiety and depressive features, and assessed a GAF of 65 indicating only mild

13  symptoms or limitations.  Tr. 30 (citing Tr. 423).  Significantly, the ALJ found that

14  Dr. Genthe opined Plaintiff was able to understand, remember and carry out simple

15  and detailed instructions, work near others without distraction, sustain an ordinary

16  work routine without supervision, respond appropriately to changes in the

17  workplace, and manage the pressures of work-related activities.  Tr. 30-31 (citing

18  Tr. 424).  The ALJ gave this opinion significant weight, rather than Ms. West's,

19  because Dr. Genthe's opinion is supported by objective findings, including normal

20  MSE results.  Tr. 31 (citing Tr. 423-24).  An ALJ may discredit opinions that are

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. This was a germane reason to reject Ms. West's opinion.

Next, the ALJ found Ms. West admitted that Plaintiff had reported the limitations and symptoms described in Ms. West's letter,[2] and as noted *infra,* the ALJ found that Plaintiff's self-report was less than fully credible. Tr. 31 (citing Tr. 463). An ALJ is not required to accept a medical opinion that is "largely based" on a claimant's non-credible self-reports. *Tommasetti*, 533 F.3d at 1041. This too was a germane reason to discount Ms. West's opinion.

Last, the ALJ found that Ms. West failed to cite any objective findings in support of her opinion, nor was there any evidence in the record that Plaintiff had ever complained of or even mentioned the reported symptoms to other providers. Tr. 31. Factors relevant to an ALJ's evaluation of any medical opinion include the amount of relevant evidence that supports the opinion, the quality of explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ found, for example, that Dr. Genthe assessed no more than mild symptoms or limitations, Tr.

---

[2] For example, Ms. West notes that "[d]uring her treatment, [Plaintiff] endorsed symptoms of Post-Traumatic Stress Disorder (PTSD)," reflecting that the source of this information was Plaintiff. Tr. 463.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

30 (citing Tr. 423), contrary to Ms. West's opinion that Plaintiff was unable to

work.  Moreover, Plaintiff told Dr. Genthe that she was unable to work due to

physical, not mental, limitations, *see* Tr. 420, indicating that Plaintiff apparently

did not believe that she suffered mental limitations as severe as those assessed by

Ms. West.  In sum, the ALJ provided germane reasons, supported by the record, for

giving Ms. West's assessed severe limitations no weight.

**B.  Adverse Credibility Finding**

Next, Plaintiff faults the ALJ for failing to provide specific findings with

clear and convincing reasons for discrediting her symptom claims.  ECF No. 17 at

14-18.

An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that her impairment could reasonably be

expected to cause the severity of the symptom she has alleged; she need only show

that it could reasonably have caused some degree of the symptom."  *Vasquez v.*

*Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

5    citations and quotations omitted).  "General findings are insufficient; rather, the

6    ALJ must identify what testimony is not credible and what evidence undermines

7    the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v.*

8    *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility

9    determination with findings sufficiently specific to permit the court to conclude

10   that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and

11   convincing [evidence] standard is the most demanding required in Social Security

12   cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

13   *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

14       In making an adverse credibility determination, the ALJ may consider, *inter*

15   *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

16   claimant's testimony or between her testimony and her conduct; (3) the claimant's

17   daily living activities; (4) the claimant's work record; and (5) testimony from

18   physicians or third parties concerning the nature, severity, and effect of the

19   claimant's condition.  *Thomas*, 278 F.3d at 958-59.

20

1    This Court finds the ALJ provided specific, clear, and convincing reasons

2   for finding that Plaintiff's statements concerning the intensity, persistence, and

3   limiting effects of her symptoms "are not entirely credible." Tr. 27.

4       *1. Lack of Objective Evidence*

5       First, the ALJ found that the objective medical evidence did not support the

6   degree of symptomology and physical limitation alleged by Plaintiff. Tr. 27-28.

7   Subjective testimony cannot be rejected solely because it is not corroborated by

8   objective medical findings, but medical evidence is a relevant factor in determining

9   the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857

10  (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

11      The ALJ set out, in detail, the medical evidence regarding Plaintiff's

12  impairments, and ultimately concluded that her allegations were inconsistent with

13  the medical evidence. Tr. 28-31. The ALJ found that Plaintiff's complaints of

14  disabling physical limitations were not supported by objective medical evidence.

15  Tr. 28. The ALJ found, for example, that Plaintiff's complaints of back pain were

16  inconsistent with treating sources who have generally reported only mild or stable

17  findings. Tr. 28-31. The ALJ found that, in October 2010, Plaintiff reported back

18  pain following a motor vehicle accident, but an ER report indicated that cervical

19  and lumbar spine x-rays were normal, as was an exam. Tr. 28 (citing Tr. 363-64,

20  402-03). The ALJ found, as another example, that on physical examination in

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

April 2011, treating physician Dr. Peterson noted no objective findings supported

Plaintiff's complaints of lumbar radiculopathy.  Tr. 28 (citing Tr. 413-14).  The

ALJ further found that in November 2011, examining neurologist Dr. Wahl noted

normal range of motion, normal sensory exam, and normal motor function testing;

he summarized cervical imaging reports as "unremarkable"; opined that his exam

and lumbar imaging indicated nothing significant, and opined further that Plaintiff

was not a good surgical candidate.  Tr. 28 (citing Tr. 341-43).  Because an ALJ

may discount pain and symptom testimony based on lack of medical evidence, as

long as it is not the sole basis for discounting a claimant's testimony, the ALJ did

not err when she found Plaintiff's complaints exceeded and were not supported by

objective and physical exam findings.

### 2. Conservative Treatment Recommended

Next, the ALJ found Plaintiff's symptom complaints less than credible

because only conservative treatment was recommended.  Tr. 28.  "[E]vidence of

'conservative treatment' is sufficient to discount a claimant's testimony regarding

severity of an impairment." *Tommasetti*, 533 F.3d at 1039 (citing *Parra v. Astrue*,

481 F.3d 742, 750-51 (9th Cir. 2007)).  The ALJ found, for example, that

Plaintiff's allegation of total disability was belied by the fact that she has not

1   required hospitalization for allegedly disabling back pain.  Tr. 28.[3]  As another

2   example, the ALJ found that the record shows that no treating or examining source

3   has referred Plaintiff for treatment with an orthopedic or neurologic specialist.  Tr.

4   28.  Moreover, the ALJ further found, examining physician Dr. Wahl opined that

5   Plaintiff was not a surgical candidate.  Tr. 28 (citing Tr. 341-43).  He opined in

6   November 2011 that recent imaging failed to show any significant findings that

7   would warrant any surgical intervention in the future.  Tr. 28 (citing Tr. 341, 344).

8   Because evidence of conservative treatment is sufficient to discount a claimant's

9   testimony regarding the severity of an impairment, the ALJ provided a clear and

10  convincing reason.  *Tommasetti,* 533 F.3d at 1039.

11       *3. Lack of Compliance with Medical Treatment*

12       Third, the ALJ found Plaintiff's complaints less than credible because

13  Plaintiff failed to comply with medical treatment.  Tr. 28.  Failing to comply with

14  treatment casts doubt on a claimant's allegations of disabling impairment, since

15  _____

16  [3] An exception is an October 1, 2010, ER visit following a motor vehicle accident,

17  Tr. 363.  The ALJ is otherwise correct.  Plaintiff has sought treatment in the ER for

18  a variety of complaints, but not for back pain.  *See* Tr. 359 (abdominal pain in

19  January 2010); Tr. 361 (sore throat in July 2010); Tr. 365 (upper respiratory issues

20  in December 2010); Tr. 367 (same in April 2011); Tr. 369 (same in October 2011).

1  one with severe impairments would presumably follow prescribed medical

2  treatment to obtain relief.  Accordingly, failing to follow a prescribed course of

3  medical treatment is a permissible reason for discounting Plaintiff's credibility.

4  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (An ALJ may consider a

5  claimant's unexplained or inadequately explained failure to follow a prescribed

6  course of treatment when assessing a claimant's credibility) (citations omitted).

7      The ALJ found, for example, that in March 2011, treating physical therapist

8  Matthew Pattillo, P.T., noted that Plaintiff had made progress with pain and

9  increased the range of motion in her lumbar spine, "yet she did not return for

10  follow-up and was discharged."  Tr. 28 (citing Tr. 312-13).  The ALJ further found

11  that Dr. Peterson noted in in April 2011 that Plaintiff refused his recommendation

12  of an injection treatment for Plaintiff's back pain.  Tr. 28 (citing Tr. 414).[4]  The

13  ALJ reasonably found that Plaintiff's lack of compliance with medical treatment

14  called into question the severity of Plaintiff's symptoms.  Tr. 28.  This was a clear

15  and convincing reason to find Plaintiff less than credible.

16  _____

17  [4] Plaintiff is correct that she eventually agreed to and obtained the medial branch

18  block injection treatment.  ECF No. 17 at 16 (citing Tr. 478, 481).  The ALJ

19  correctly found, however, that Plaintiff's initial refusal diminished the credibility

20  of her claims of disabling impairment.

*4. Daily Activities*

Fourth, the ALJ found that Plaintiff's daily activities were inconsistent with allegedly disabling mental and physical impairments. Tr. 25, 27-28.

A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn,* 495 F.3d at 639; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989 ) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." ). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally disabling impairment." *Molina,* 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

Plaintiff reported that she could go out alone, as often as twice per day. She drove, shopped for groceries once a week, and spent time with family, Tr. 31 (citing Tr. 253-54), which is inconsistent with disabling social anxiety. Plaintiff further reported that she traveled to California and Mexico to visit family. Tr. 25, 31 (citing Tr. 60, 499). Plaintiff and her spouse reported that Plaintiff had the

ability to pay bills, manage a savings account, count change, and use a checkbook

or money orders.  Tr. 30-31 (citing Tr. 244-48, 253).  In addition, Plaintiff reported

that she was able to regularly attend church services, drive a car, shop in stores,

visit her grandchildren, and prepare simple meals.  Tr. 25 (citing Tr. 253-54).  The

level of Plaintiff's activities are inconsistent with claimed limitations, such as

Plaintiff's report that she cannot stand to be around people due to pain, Tr. 255, yet

she also reported that she visits her grandchildren daily and regularly attends

church.  Tr. 27 (citing Tr. 254).  The evidence of Plaintiff's daily activities in this

case may be interpreted more favorably to the Plaintiff, however, such evidence is

susceptible to more than one rational interpretation, and therefore the ALJ's

conclusion must be upheld.  *See Burch*, 400 F.3d at 679.  Here, Plaintiff's daily

activities were reasonably considered by the ALJ to be inconsistent with Plaintiff's

allegations of disabling functional limitations.

### 5. Reason for Stopping Work

The ALJ found that Plaintiff stopped working for reasons unrelated to her

disability.  Tr. 30.  When considering a claimant's contention that she cannot work

because of her impairments, it is appropriate to consider whether the claimant has

not worked for reasons unrelated to her alleged disability.  *See Bruton v.*

*Massanari,* 268 F.3d 824, 828 (9th Cir. 2001) (the fact that the claimant left his job

because he was laid off, rather than because he was injured, was a clear and

convincing reason to find him not credible); *Tommasetti*, 533 F.3d at 1040 (the ALJ properly discounted claimant's credibility based, in part, on the fact that the claimant's reason for stopping work was not his disability).

Here, the ALJ found that in an agency report, Plaintiff stated that she stopped working due to her conditions, Tr. 230, but at the hearing, Plaintiff testified that she quit work because her boss would not allow her to take time off when she needed to visit her mother who had suffered a heart attack. Tr. 30 (referring to Plaintiff's testimony at Tr. 62). The ALJ provided a specific, clear and convincing reason, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

Moreover, the ALJ found that Plaintiff's complaints are only partially credible, in part "due to the inconsistencies in her reports" regarding why she stopped working. Tr. 31. An ALJ may support an adverse credibility finding by citing to inconsistencies in the claimant's testimony, prior inconsistent statements and general inconsistencies in the record. *Thomas*, 278 F.3d at 958-59 (inconsistencies in the claimant's testimony is properly considered); *Tommasetti*, 533 F.3d at 1039 (prior inconsistent statements may be considered); *Molina*, 674 F.3d at 1112 (an ALJ may support an adverse credibility finding by citing to general inconsistencies in the record). Here, the ALJ appropriately relied on the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27

1  inconsistency as another clear and convincing reason for rejecting Plaintiff's

2  symptom testimony.

3          *6. Lack of Compliance with Mental Health Treatment*

4          Sixth, the ALJ found that the objective evidence did not support a more

5  restrictive mental RFC than that assessed by the ALJ.  Tr. 30.  The ALJ found, for

6  example, that Plaintiff's treatment with anti-anxiety medication and sporadic

7  counseling did not support more severe mental limitations.  Tr. 30.  Unexplained

8  failure to seek treatment provided a permissible reason for discounting Plaintiff's

9  credibility.  *See Tommasetti*, 533 F.3d at 1039 (unexplained or inadequately

10 explained failure to seek treatment or to follow a prescribed course of treatment is

11 properly considered).  Here, the record shows that Plaintiff completed eleven

12 mental health counseling sessions and then did not return.  Tr. 463.

13         In sum, despite Plaintiff's arguments to the contrary, the ALJ provided

14 specific, clear and convincing reasons, supported by the record for rejecting

15 Plaintiff's testimony.  *See Ghanim*, 763 F.3d at 1163.

16 **C. Step Five Finding**

17         Plaintiff faults the ALJ's step five finding.  ECF No. 17 at 18-20.  Plaintiff

18 contends that the ALJ should have incorporated unspecified "reaching limitations

19 and any other limitations associated with Ms. Mendez's shoulder impairment" in

20 her hypothetical to the vocational expert.  ECF No. 17 at 18.  However, a claimant

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 28

fails to show that an ALJ's step five determination is incorrect by simply restating the argument that the ALJ improperly weighed the evidence. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff also faults the ALJ for failing to include limitations assessed by examining psychologist Dr. Genthe in the RFC presented to the vocational expert at step five. ECF No. 17 at 19. She contends that the ALJ should have included in the RCF Dr. Genthe's assessed "fair" ability to respond to the public and coworkers, and "fair" ability to respond appropriately to criticism from supervisors. Plaintiff vaguely contends that the assessment of "fair" indicates "significant limitations" that should have been included in the RFC, but she does not develop the argument any further, and fails to identify the functional limitations that she contends are caused by these purported impairments. ECF No. 17 at 10-20. Accordingly, that argument is waived. *See Carmickle*, 533 F.3d at 1161 (declining to consider a matter that was not "specifically and distinctly argued in an ... opening brief."); *Locastro v. Colvin*, No. C14-5499TSZ, 2015 WL 917616, at *2 (W.D. Wash. Mar. 3, 2015) ("The Court may deem arguments that are unsupported by explanation to be waived.") (citations omitted); *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Given that Plaintiff has failed to properly develop the argument ... the Court considers [it] waived and will not consider this issue.").

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 29

1    Because the Court finds the ALJ properly weighed the evidence, Plaintiff

2    fails to establish error at step five.

3                                    **CONCLUSION**

4    After review, the Court finds that the ALJ's decision is supported by

5    substantial evidence and free of harmful legal error.

6    **IT IS ORDERED:**

7    1.  Plaintiff's motion for summary judgment (ECF No. 17) is **DENIED**.

8    2.  Defendant's motion for summary judgment (ECF No. 19) is **GRANTED**.

9    The District Court Executive is directed to file this Order, enter

10   **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE**

11   the file.

12   DATED this 30th day of December, 2016.

13                                    *S/ Mary K. Dimke*
                                      MARY K. DIMKE
14                                    U.S. MAGISTRATE JUDGE

15

16

17

18

19

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 30